## Commonwealth v. Milton

*Nancy Butts, assistant district attorney,* for the Commonwealth.

*Joseph Cottrell,* for defendant.

KIESER, *J.,* March 23, 1992—The following opinion and order are made in consideration of the motion for habeas corpus filed by Joseph K. Cottrell, Esq., on behalf of his client, defendant, Daniel Roland Milton. The defendant is charged in the information with criminal attempt (the attempted crime being criminal trespass), possessing instruments of crime, loitering and prowling at nighttime and criminal mischief. The evidence presented to the court consisted primarily of a transcript of the preliminary hearing and statements of counsel.

## FINDINGS OF FACT

The above charges against the defendant arise out of events occurring on the night of October 10, 1991. From

the evidence presented, the court makes the following factual determinations:

At approximately midnight Kelly Ann Kerstetter, who resided at 1208-1/2 Isabella Street, Williamsport, Pa., heard a knock at the downstairs door of her residence. Upon looking out the window, she saw no one and assumed they had left. Ms. Kerstetter then heard someone on her back porch and the sound of the screen door being ripped or sliced. She then phoned the police. While she was on the phone the noise at the door stopped. Ms. Kerstetter could then see the silhouette of the kitchen window moving upward. Approximately two minutes later police arrived.

Williamsport police officers Bauers and Laurenson responded to the call in a marked police cruiser. Bauers exited the vehicle at the front of the residence. It was at this point that Bauers observed an individual (later identified as the defendant, Daniel Milton) who was walking at a point approximately 100 feet east at the intersection of Isabella and Grier Streets. The individual was crossing Grier Street from the northwest corner to the northeast corner of the intersection. The officers investigated the Kerstetter premises and observed a vertical cut/tear in the screen and smudge marks on the kitchen window and porch banister.

During the investigation by the officers, the defendant was stopped by a third officer, Peacock. The defendant was determined to be the same individual who had been observed by Bauers, crossing Grier Street. Peacock stopped the defendant on the sidewalk, on the north side of Isabella Street approximately three houses east of Grier Street. The defendant was still walking in an easterly direction when stopped. The defendant was questioned by the officers and was directed toward the front of the patrol car to be searched. It was then the defendant

advised Peacock that he had a knife and withdrew a relatively small but sharp paring knife from his pants pocket. The defendant was taken into custody and given his *Miranda* rights.

The defendant waived his *Miranda* rights and agreed to talk with the police. The defendant, Milton, stated to Bauers he had been at the Bull and Barrel Tavern and walked easterly on Park Avenue to Grier Street. He then stated he had proceeded south on Grier Street to Isabella. The streets travelled and direction the defendant was observed walking are consistent with the defendant walking from the area of the Bull and Barrel Tavern. He further stated that he had not been in the block where 1208-1/2 Isabella Street is located.

The victim also testified at the preliminary hearing that she and the defendant "were friends." The exact nature of the relationship is unclear, with the testimony supporting a finding that the victim and the defendant were acquaintances.

## DISCUSSION

The defendant makes two claims:

(1) The Commonwealth's evidence establishes only mere presence of the defendant in the vicinity of the attempted criminal trespass and as such is insufficient, as a matter of law, to sustain a conviction;

(2) An ordinary kitchen paring knife is not an instrument of crime.

This court agrees with the defense on each claim.

The test for sufficiency of evidence is whether, viewing the evidence in the light most favorable to the Commonwealth, the trier of fact could reasonably find that all of the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Robson,*

461 Pa. 615, 337 A.2d 573 (1975). Granted, circumstantial evidence alone may be sufficient to sustain a conviction. *Commonwealth v. Jacobs,* 247 Pa. Super. 373, 372 A.2d 873 (1977). However, a conviction must be based upon more than mere suspicion or conjecture. *Commonwealth v. Rambo,* 488 Pa. 334, 412 A.2d 535 (1980).

The only evidence the Commonwealth has put forth in this case is that the defendant was walking easterly across Grier Street approximately 100 feet away from the house where the entry was attempted. While the defendant's direction of travel when first observed was away from the crime scene, it did not necessarily indicate that the defendant had walked by the crime scene. Quietly walking home from a tavern at midnight is a legitimate and lawful activity for an adult citizen. No evidence appears of record to suggest the defendant was doing anything other than what he claimed to be doing.[1] Therefore, the defendant's mere presence in the vicinity of the crime is insufficient to sustain a conviction. *Commonwealth v. Garrett,* 412 Pa. 8, 222 A.2d 902 (1966).

In *Commonwealth v. McCrea,* 308 Pa. Super. 271, 454 A.2d 132 (1982), the Commonwealth's proof established that the defendant was standing in an alley urinating at 2:55 a.m. with pocketknife and pliers in his possession,

---

1. Such evidence could consist of matters such as, the elapsed time from the time the defendant left the tavern, the normal and usual route the defendant would follow to his home or intended place of residence, the absence of any other way for the perpetrator to leave the scene, evidence of attempting to flee or evade being observed, whether or not the defendant had been drinking, whether or not the defendant was at the tavern or if the defendant had a vehicle parked at the tavern or some other location. It should also be noted that if people choose to imbibe at a tavern, it is the court's preference that they walk rather than drive themselves home, should they be under the influence of alcohol.

four feet away from a jack base used to put a hole in a rear wall of a market. That evidence was held insufficient to support the defendant's conviction of attempted burglary. Similarly, the Superior Court of Pennsylvania in *Commonwealth v. Smith*, 264 Pa. Super. 303, 399 A.2d 788 (1979) has held that evidence to convict on attempted burglary was insufficient where defendant was standing 10 feet away from an apartment building, when the second floor tenants heard a crash of glass and saw defendant walking away from the scene; it was later determined that a protective screen had been pried off the window and a rock thrown through it causing the sound heard by the tenants. In the instant case, the defendant's location in relation to the crime scene is remote compared to facts of *McCrea* and *Smith* and his activities have much more of an appearance of legitimacy than either of the defendants in the foregoing cases. Here, the jury is left to pure speculation that the defendant, Milton, was at the scene of the crime and not walking legitimately along another street, when the attempted entry occurred, two minutes before the police arrived.

Even though Milton had a small kitchen paring knife in his possession, there is no evidence that it had any relationship to the attempted crime or that he intended to use it for any criminal purpose. This evidence is insufficient to sustain a conviction of criminal attempt.

The additional evidence in this case, that the victim and the defendant were acquaintances, does not add to the Commonwealth's case. From the testimony presented at the preliminary hearing there is no inference that can be drawn from this fact. Nothing in the Commonwealth's presentation at the preliminary hearing suggested that because of the acquaintanceship that the defendant had any reason, motive or desire to return to and enter into the victim's residence. It is certainly probable that the nature

of the acquaintanceship was such that it would be exculpatory evidence, in that it would be unlikely that a burglar would want to enter into the home of a friend. Since the testimony regarding the acquaintanceship was not developed at the preliminary hearing, in either direction, no inference can be drawn therefrom and a jury would have to speculate as to what weight should be given to this fact, if any.

Therefore, Counts I, III and IV of the information will be dismissed.

With regard to Count II, the charge of possessing instruments of crime, this court, given the above facts, is not prepared to find that the kitchen paring knife was an instrument of crime. It is not a "criminal instrument" within the meaning of the statute prohibiting possession of criminal instruments; it is not specially made or specially adapted for criminal use, nor is a paring knife commonly used for criminal purposes.[2] As noted above, the evidence is insufficient to connect the defendant to the crime; likewise, it does not suffice to connect his knife. Certainly the screen in the door could have been cut by a knife such as the defendant's, but it also could have been cut

---

2. Possessing an instrument of crime is made criminal by the provisions of 18 Pa.C.S. §907(a)(c) as follows:

"(a) *Criminal instruments generally*—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

"(c) *Definitions*—As used in this section the following words and phrases shall have the meanings given to them in this subjection:

"Instrument of crime:

"(1) Anything specially made or specially adapted for criminal use; or

"(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."

with many instruments or even ripped. No evidence suggested the screen was cut by the defendant's knife except his presence 100 feet away, two minutes later. The record is devoid of any evidence showing the defendant's "intent to employ the knife" criminally, with the exception of it merely being possessed by him, which the Commonwealth would argue circumstantially, is evidence, since a "paring knife" is normally found in a kitchen, not a pants pocket. We could accept the Commonwealth's argument in some situations, perhaps, but in this case the evidence concerning intent is so weak that the jury would have to speculate; it is insufficient to sustain a conviction. Therefore, Count II of the information will also be dismissed.

## ORDER

And now, March 23, 1992, the defendant's motion for habeas corpus is granted. All charges against the defendant in this matter are dismissed. Costs are placed on the County of Lycoming.